UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY MONTEZ FULGHAM,

                Petitioner,                        Case No. 17-cv-13151
                                                  Hon. Matthew F. Leitman

v.

THOMAS WINN,

                Respondent.

_____/

## OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS (ECF No. 1), (2) DENYING CERTIFICATE OF APPEALABILITY, AND (3) GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Petitioner Anthony Montez Fulgham is a state prisoner in the custody of the Michigan Department of Corrections. In 2014, a jury in the Wayne County Circuit Court convicted Fulgham of second-degree murder, Mich. Comp. Laws § 750.317, possession of a firearm by a person convicted of a felony, Mich. Comp. Laws § 750.224f, and possession of a firearm during the commission, or attempt to commit, a felony, Mich. Comp. Laws § 750.227b.

On September 26, 2017, Fulgham filed a *pro se* petition for a writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254. (*See* Pet., ECF No. 1.) In the petition, Fulgham raises four claims: (1) the prosecution failed to investigate, disclose, and preserve certain exculpatory evidence; (2) the prosecution intimidated

a witness and forced the witness to falsely implicate Fulgham as the killer; (3) defense counsel was ineffective; and (4) there was insufficient evidence at trial to support the murder conviction.  The Court has carefully reviewed these claims and concluded that they do not entitle Fulgham to relief.  In addition, Fulgham's first and second claims are procedurally defaulted.  Accordingly, for all of the reasons explained below, the Court **DENIES** the petition.

## I

Fulgham was charged with open murder, felon in possession of a firearm, and felony firearm.  The Michigan Court of Appeals described the relevant facts as follows:

> Defendant's convictions arise from the June 8, 2013 shooting death of 24–year–old Robert Edwards, who died from a single gunshot wound to his chest. According to witness testimony, defendant and the victim were engaged in conversation on a street corner during the evening while it was still light outside. Michael Haliburton, who witnessed the incident, saw another man come up to the two men.  Juwan Lumpkin testified that he joined defendant and Edwards. Lumpkin heard defendant say something about a house that had burned down. Haliburton heard one gunshot, and then looked up and saw a man wearing a white Polo shirt and bright white gym shoes fire a second gunshot toward Edwards, who was running away.  The police discovered Edwards's body a short distance away.  The police arrested defendant in his residence approximately six hours later.  They found a firearm on a pillow in defendant's bedroom.  Ballistics testing confirmed that this firearm was the weapon used to shoot Edwards. Lumpkin gave a statement to the police in which he identified defendant as the shooter.  At trial,

2

Lumpkin identified a third person, known as J.D., as being involved in the incident.  According to Lumpkin, both J.D. and defendant had guns.   Lumpkin claimed that he previously identified defendant as the shooter only because the police threatened to charge him with the offense unless he implicated defendant.

Defendant testified at trial that he was with Edwards at the time of the shooting, but claimed that Edwards and J.D. had been involved in a fight the previous night and that J.D. approached Edwards on the street on the night of the incident and began firing his gun.  J.D. was also wearing a white shirt on the night of the incident.  Defendant testified that he ran away when the shooting began.  He also saw Edwards running, so he thought Edwards was okay. Defendant met J.D. at a neighborhood "hang out" later that evening.   According to defendant, J.D. appeared intoxicated, so defendant took J.D.'s gun and brought it home with him.  Defendant denied knowing that Edwards had been shot.  He claimed that he tried to call Edwards later that night, but the call went directly to Edwards's voice mail.

*People v. Fulgham*, 2016 WL 232320, at *1 (Mich. Ct. App. Jan. 19, 2016).

On January 31, 2014, the jury found Fulgham guilty of second-degree murder, felon in possession of a firearm, and felony firearm.  On February 19, 2014, the trial court sentenced Fulgham to fifty to eighty years in prison for the murder conviction, a concurrent term of three to five years in prison for the felon-in-possession conviction, and a consecutive term of two years for the felony-firearm conviction.

Fulgham appealed his convictions as a matter of right to the Michigan Court of Appeals, and that court affirmed his convictions.  *See id*. Fulgham thereafter filed an application for leave to appeal in the Michigan Supreme Court.  On June 28, 2016,

3

the Michigan Supreme Court denied leave. *See People v. Fulgham*, 880 N.W.2d 575

(Mich. 2016).

On September 26, 2017, Fulgham filed a *pro se* habeas corpus petition in this

Court. (*See* Pet., ECF No. 1.)  His grounds for relief read as follows:

> 1.  Right to due process of law was denied when the government failed to investigate, disclose and analyze physical exculpatory evidence.
>
> 2.  The prosecutor committed misconduct by intimidating and forcing [a witness] into testifying untruthfully.
>
> 3.  Ineffective assistance of counsel.
>
> 4.  The evidence was insufficient to support the verdict of second-degree murder.

(*Id.*, PageID.5-10.)

Respondent argues that the state appellate court's rejection of Fulgham's

claims was not unreasonable and that Fulgham's first and second claims in the

petition are procedurally defaulted because the state appellate court reviewed the

claims for plain error. (*See* Ans., ECF No. 11, PageID.154-155, 158.)

## II

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

requires federal courts to uphold state court adjudications on the merits unless the

state court's decision (1) "was contrary to, or involved an unreasonable application

of, clearly established Federal law, as determined by the Supreme Court of the

United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

### III

### A

Fulgham first claims that the prosecution violated his right to due process of law by failing to investigate, disclose, and preserve exculpatory physical evidence. More specifically, Fulgham contends that the police and/or prosecution failed to (1) take fingerprints from the gun they collected, (2) test his clothes for gunpowder residue or DNA, and (3) produce his clothes at trial after they were destroyed in a flood. (*See* Pet., ECF No. 1, PageID.5, 16.)   Fulgham also contends that the police mishandled the gun in evidence by not wearing gloves when they seized it.  (*See id.*, PageID.16-17.)

The Michigan Court of Appeals held that Fulgham did not preserve this claim by raising it in the state trial court.  It therefore reviewed the claim for "plain error" and rejected it. *See Fulgham*, 2016 WL 232320, at ** 1-3.  Respondent argues that this claim is procedurally defaulted, and, in any event, fails on the merits.  The Court agrees.

1

The Court first turns Respondent's claim that this claim is procedurally defaulted. "[A] federal court will not review the merits of [a state prisoner's] claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012). Determining whether a habeas petitioner's claim has been procedurally defaulted is a four-step inquiry:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural ground is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. . . . Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Kelly v. Lazaroff*, 846 F.3d 819, 828 (6th Cir. 2017). Each of these factors is satisfied here. Thus, this claim is procedurally defaulted.

First, Fulgham failed to comply with a state procedural rule applicable to this claim. That rule is "the general and longstanding rule in Michigan that 'issues that are not properly raised before a trial court cannot be raised on appeal absent compelling or extraordinary circumstances.'" *People v. Cain*, 869 N.W.2d 829, 832

(Mich. 2015) (quoting *People v. Grant,* 520 N.W.2d 123, 128 (Mich. 1994)). *See also People v. Morgan*, 2020 WL 359627, at *12 (Mich. Ct. App. Jan. 21, 2020) (applying rule to claims that prosecutor withheld exculpatory evidence); *People v. Sowa*, 2016 WL 1125512, at *8 (Mich. Ct. App. Mar. 22, 2016) (applying rule to claims prosecution failed to investigate, disclose, and analyze physical evidence). Fulgham did not comply with that rule. Indeed, Fulgham did not object in the trial court to the prosecution's alleged failure to investigate, disclose, analyze, and preserve the evidence Fulgham now identifies as exculpatory. Nor did he object to the admission of the gun in evidence or testimony about the clothes seized from his bedroom. Thus, the first factor for a procedural default is satisfied.

Next, the Michigan Court of Appeals enforced a state procedural sanction. As explained above, because Fulgham failed to object to the introduction of this evidence at trial, the Michigan Court of Appeals subjected Fulgham's due process claim to a more stringent "plain error" standard of review. *See Fulgham*, 2016 WL 232320, at *1 and *3. The second element of the procedural default test is therefore satisfied. *See*, *e.g.*, *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001) (holding that a state appellate court's review of a claim for plain error is considered enforcement of a procedural default rule).

Third, Michigan's contemporaneous-objection rule is an adequate and independent state ground for denying review of a federal constitutional claim. The

rule is both well-established and normally enforced. *See Taylor v. McKee*, 649 F.3d 446, 450-51 (6th Cir. 2011) (explaining that the "[f]ailure to comply with well-established and normally enforced procedural rules usually constitutes 'adequate and independent' state grounds" and noting that "Michigan's contemporaneous-objection rule is both a well-established and normally enforced procedural rule"). Thus, the third element of the procedural default test is satisfied.

Fourth, Fulgham has failed to show "cause" for his failure to object at trial. Here, the factual and legal bases for Fulgham's claim were known to him at trial. And he has not alleged any external factor that impeded his efforts to object to the prosecution's alleged errors. Nor has he alleged that his trial attorney was ineffective for failing to object to the prosecution's alleged failure to investigate, disclose, and preserve physical exculpatory evidence. Moreover, Fulgham's counsel at trial did cross-examine a police officer (Officer Detrick Mott) about the clothes that were gathered as evidence and were later destroyed in a flood at the police station. Counsel also cross-examined Officer Mott about the manner in which the police handled the gun when they seized it. Under all of these circumstances, Fulgham has not shown cause for his failure to follow Michigan's contemporaneous-objection rule.[1]

---

[1] Because Fulgham has not shown cause for his error, the Court need not consider whether he was actually prejudiced by the prosecution's alleged constitutional

Nor has Fulgham satisfied the alternative ground for satisfying this element of the procedural-default inquiry: that the failure to consider his due process claim will result in a fundamental miscarriage of justice.  *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  "A fundamental miscarriage of justice results from the conviction of one who is actually innocent."  *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (internal quotation marks omitted).  "To be credible, [a claim of actual innocence] requires [the] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Fulgham has not met this standard here.  He has not presented the Court with any exculpatory scientific evidence, trustworthy eyewitness account, or critical physical evidence that was not presented at trial.  Indeed, in Fulgham's initial response to Respondent's motion, he did not respond at all to Respondent's argument that this claim is procedurally defaulted.  After Fulgham filed that response, he submitted a letter to the Court from a private investigator. (*See* Mot. to Supplement, ECF No. 20, PageID.1286.)  In that letter, the investigator states that someone who was working in the Northeastern District Police Station at the time in

---

errors. *See Smith v. Murray*, 477 U.S. 527, 533 (1986); *Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000).

question did not recall a flood. (*See id.*)  Fulgham insists that this letter provides evidence that (1) his clothes were not destroyed in a flood while stored in evidence at the Northeastern District Police Station and (2) Officer Mott lied at trial when he testified that Fulgham's clothes were destroyed in that flood. (*See id.,* PageID.1283-1284.)

The Court is not persuaded that the letter from the private investigator establishes Fulgham's actual innocence.  The Court acknowledges that a key factor at trial was an eyewitness description of the clothes that the shooter was allegedly wearing on the night of the murder.  But the fact that an employee at the Northeastern District Police Station did not recall a flood at the police station while Fulgham's clothes were stored there does not mean that a flood did not occur. Nor does it establish that Officer Mott was lying about the reason Fulgham's clothes were missing at the time of trial.  Finally, even if there was not a flood, and even if Officer Mott did testify falsely at trial, that still would not establish that Fulgham is actually innocent of the crimes for which he was incarcerated.

For all of these reasons, Fulgham's due process claim is procedurally defaulted, and Fulgham has not presented any basis to overcome that default. Fulgham is therefore not entitled to federal habeas relief on this claim.

**2**

Even if Fulgham had not procedurally defaulted his due process claim, the claim would still fail on the merits.  As explained above, Fulgham argues that the police and/or prosecution violated his due process rights when they "failed" to (1) "gain fingerprints from the gun" found under his bed, (2) test his clothes "for gunpowder or DNA," and (3) produce his clothes at trial because they were allegedly destroyed in a flood. (Pet., ECF No. 1, PageID.5.)  He further maintains that the police acted in bad faith by not wearing gloves when handling the gun and by not preserving the clothes or presenting them at trial without any proof that there was actually a flood at the police station. (*See id.*, PageID.16-18.)  Fulgham insists that these failures violated his rights under three United States Supreme Court decisions: *Brady v. Maryland*, 373 U.S. 83 (1963), *California v. Trombetta*, 467 U.S. 479 (1984), and *Arizona v. Youngblood*, 488 U.S. 51 (1988).  The Michigan Court of Appeals reviewed this claim for plain error and rejected it:

> Defendant argues that his right to due process was violated because the police failed to investigate or preserve material evidence. We disagree.
>
> "For an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court." *People v. Metamora Water Serv, Inc,* 276 Mich.App 376, 382; 741 NW2d 61 (2007). Since the issue was not raised in the trial court, it is unpreserved. See *id.* Because this issue is unpreserved, our review is limited to plain error affecting defendant's substantial rights. See *People v. Carines,* 460 Mich. 750, 763; 597

NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id.* The last requirement involves a showing of prejudice, meaning that the error affected the outcome of the trial court proceedings. *Id.* Finally, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect [ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id.* (citation and quotation marks omitted; second alteration in original).

The right to due process under the Fourteenth Amendment to the United States Constitution prohibits the prosecution from suppressing material evidence favorable to the defense. *Brady v. Maryland,* 373 U.S. 83, 87; 83 S.Ct. 1194; 10 L.Ed.2d 215 (1963). To establish a *Brady* violation, the defendant must show that (1) the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) viewed in its totality, the evidence was material. *People v. Chenault,* 495 Mich. 142, 155; 845 NW2d 731 (2014). In contrast, when the government fails to preserve evidence whose exculpatory value is indeterminate or "potentially useful," the defendant has the burden of proving that the government acted in bad faith in failing to preserve the evidence. *Arizona v. Youngblood,* 488 U.S. 51, 57–58; 109 S.Ct. 333; 102 L.Ed.2d 281 (1988). However, this bad-faith standard does not apply to evidence that has not yet been developed because neither the police nor the prosecution has a duty to assist a defendant in developing potentially exculpatory evidence. *People v. Anstey,* 476 Mich. 436, 461; 719 NW2d 579 (2006).

Defendant first argues that his right to due process violated because the police failed to preserve the clothing he was wearing at the time of the offense. Although the police collected defendant's clothing at the time of his arrest,

testimony at trial revealed that the clothing was no longer available because it had been lost or destroyed in a flood that occurred at the police station. Because this evidence was not intentionally lost or destroyed by the police, there is no basis for finding that the police acted in bad faith in failing to preserve the evidence. See *Youngblood,* 488 U.S. at 57–58. Further, there is no indication that the clothing would have been potentially useful to the defense. Defendant does not dispute that the clothing matched the description of the clothing worn by the shooter. Although defendant claims that the clothing could have been tested for gunshot residue, testimony at trial indicated that the police no longer perform gunshot residue testing because it is not considered accurate. Thus, defendant fails to show that his due-process rights were violated with regard to the lost or destroyed clothing. See *id.*

Defendant also contends that the police failed to test him for gunshot residue after his arrest. In light of the testimony that gunshot residue testing is no longer performed because of its questionable accuracy, defendant cannot establish that the police acted in bad faith by failing to test him for gunshot residue. See *Youngblood,* 488 U.S. at 57–58. In addition, there is no basis for concluding that any testing would have been exculpatory, particularly because there was a lapse of up to six hours between the time of the shooting and defendant's arrest, thereby giving defendant the opportunity to wash away any residue or allow any residue to disappear naturally. Thus, defendant's argument fails. See *id.*

Defendant also argues that the police should have obtained Edwards's telephone records to confirm whether defendant had called Edwards's cell phone after the shooting. This argument does not involve suppression of evidence or a failure to preserve evidence, but rather a failure to develop evidence in the state's possession. As indicated previously, neither the police nor the prosecution had a duty to assist in developing evidence for defendant's benefit. See *Anstey,* 476 Mich. at 461. Moreover,

defendant does not offer any reason why the police should have expected Edwards's phone to contain material evidence. Defendant admitted in his testimony that he did not inform anyone that he had called Edwards after the shooting. Therefore, defendant cannot establish that the government acted in bad faith by failing to request Edward's telephone records. Furthermore, defendant could have presented evidence in the form of his own telephone phone records to establish that he called Edwards's cell phone after the shooting. In addition, even if the records had been obtained and showed that defendant called Edwards after the shooting, this evidence would not have eliminated the possibility that defendant was the shooter. See *Youngblood,* 488 U.S. at 57–58. Thus, this argument does not support defendant's claim of a due-process violation. See *id.*

Defendant also argues that the police failed to test for fingerprints the handgun recovered from his bed at the time of his arrest. At trial, there was testimony that police officers handled the gun at the time of defendant's arrest because they were more concerned with taking control of the gun for officer safety. It was examined later for fingerprints, but there were too many prints to reveal useable prints. Under the circumstances, defendant has failed to show that the police acted in bad faith with regard to how they handled the gun. See *Youngblood,* 488 U.S. at 57–58. For these reasons, defendant has failed to meet his burden of demonstrating a plain error affecting his substantial rights. See *Carines,* 460 Mich. at 763.

*Fulgham*, 2016 WL 232320, at ** 1-3.

Fulgham has not shown that the Michigan Court of Appeals' conclusion is an unreasonable application of, or contrary to, clearly established federal law. First, Fulgham has not established that the Michigan Court of Appeals unreasonably applied *Brady*. In *Brady*, the Supreme Court held that "suppression by the

14

prosecution of evidence favorable to an accused upon request violates due process where the evidence is material, either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87.  But here, Fulgham does not appear to claim that the prosecution suppressed any material, exculpatory evidence in violation of *Brady*.  Instead, he seems to be claiming that the police and/or prosecution failed to preserve evidence that they knew to be exculpatory, failed to test evidence for potentially exculpatory evidence, and acted in bad faith when collecting evidence in violation of *Trombetta* and *Youngblood*, *supra*.  Those claims do not fall within the ambit of *Brady*, and, in any event, fail for all of the reasons stated immediately below.  Simply put, Fulgham has not put forward any basis for the Court to conclude that the Michigan Court of Appeals unreasonably applied *Brady* when it rejected his due process claim.

Fulgham has also failed to establish that the Michigan Court of Appeals' ruling was contrary to *Trombetta*.  In *Trombetta*, the Supreme Court held that:

> [w]hatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense.  To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

*Trombetta*, 467 U.S. at 488-89 (footnote and internal citation omitted).  It appears that Fulgham is arguing that the police and/or prosecution violated the duty

15

described in *Trombetta* when they failed to preserve his clothes that were later destroyed in a flood before trial. Fulgham insists that had the clothes been preserved, they could have been tested for gunshot residue or DNA evidence, and the results of that test would have exonerated him. (*See* Pet., ECF No. 1, PageID.16.) But Officer Mott testified that the police no longer test for gunshot residue because it was determined years earlier that the test is not accurate. (*See* 1/28/14 Trial Tr. at 120, 126-126, ECF No. 12-5, PageID.588, 594-595.) Moreover, even if the clothes had been tested for gunshot residue or DNA evidence and the results proved to be negative, any negative results would not necessarily have exonerated Fulgham. There could have been other explanations for the lack of gunshot residue or DNA evidence, such as the fact that the shooting was not close range or the six-hour time lapse between the shooting and when police arrested Fulgham. Fulgham's mere speculation about the potential usefulness of a gun-residue or DNA test is insufficient to prove a due-process violation. *See Blake v. Cty. of Livingston*, 257 F. App'x 848, 855 (6th Cir. 2007). Fulgham has also not shown that, before the clothes were destroyed, it was "apparent" to the police and/or prosecution that the clothes had "exculpatory value." *Trombetta*, 467 U.S. at 491. For all of these reasons, Fulgham has failed to show that the Michigan Court of Appeals' ruling was contrary to *Trombetta*.

Finally, Fulgham has not established that the Michigan Court of Appeals' rejection of his due process claim was an unreasonable application of, or contrary to, *Youngblood*.  In *Youngblood*, the Supreme Court held that where the police act in "bad faith," the "failure to preserve potentially useful evidence" could constitute the "denial of due process of law." *Youngblood*, 488 U.S. at 58.  But Fulgham has not shown any evidence of bad faith here.  He argues that the police acted in bad faith when they recovered the gun from his bedroom without wearing gloves.  He says that that misconduct made it impossible for the police to obtain viable fingerprints from the weapon that could have exonerated him. But the Michigan Court of Appeals rejected that argument and explained that "[a]t trial, there was testimony that police officers handled the gun at the time of defendant's arrest [without wearing gloves] because they were more concerned with taking control of the gun for officer safety. [….] Under the circumstances, defendant has failed to show that the police acted in bad faith with regard to how they handled the gun." *Fulgham*, 2016 WL 232320, at *3.  Fulgham has not shown that that conclusion was unreasonable.  Nor has Fulgham shown that the police acted in bad faith with respect to the flood that destroyed his clothing.  Fulgham has therefore not established that the Michigan Court of Appeals' rejection of this claim was an unreasonable application of, or contrary to, *Youngblood*.

For all of these reasons, Fulgham has failed to show that the Michigan Court of Appeals' unreasonably rejected his due process claim. Thus, even if the claim was not procedurally defaulted, the Court would still not grant him federal habeas relief on that claim.

## B

Fulgham next claims that the prosecution committed misconduct when it intimidated and forced eyewitness Juwan Lumpkin into presenting false testimony. Lumpkin provided several different versions of events at different times. First, on the day of the shooting, Lumpkin told police that Fulgham was the shooter. Lumpkin also identified Fulgham as the shooter in a photo array. Then, on the first day of Fulgham's preliminary examination, Lumpkin testified – contrary to his previous statement to police that Fulgham was the shooter – that he did not know Fulgham and that he did not see a gun or who shot the victim. At the end of the first day of that preliminary examination, the trial court ordered Lumpkin held on a material-witness detainer with a $50,000 cash bond. (*See* 9/25/13 Prelim. Examination Tr. at 6-52, ECF No. 12-2, PageID.232-278.)

Lumpkin's examination continued the next day. He testified that he had lied when he testified on the first day of the preliminary examination that he did not know Fulgham and that he did not see the shooting. Lumpkin further identified Fulgham as the shooter and confirmed that he (Lumpkin) had identified Fulgham to police

during a photo array.  Finally, Lumpkin described Fulgham as having a silver handgun with a wooden handle and wearing a white polo shirt, blue jeans, and white gym shoes at the time of the shooting.  At the conclusion of the Lumpkin's testimony, the trial court released him from the detainer. (*See* 9/26/13 Prelim. Examination Tr. at 16-20, ECF No. 12-3, PageID.295-299.)

Lumpkin's story changed again when he testified at Fulgham's trial.  He testified for the first time that a third man, named J.D., was also present at the shooting, and that as he (Lumpkin) was walking away from Fulgham and the victim, he (Lumpkin) heard two or three gunshots. (*See* 1/28/14 Trial Tr. at 45-52, ECF No. 12-5, PageID.513-520.)  Lumpkin said that he had lied to police on the day of the shooting when he said that Fulgham was the shooter, and Lumpkin testified that he did not see Fulgham shoot the victim or fire a gun. (*See id*. at 73-74, PageID. 541-542).  Lumpkin further explained that he did not previously tell the police about J.D. because the police were forcing him to say that Fulgham had committed the shooting.  Lumpkin said that the police told him that if he did not implicate Fulgham, the police would charge him (Lumpkin) with the murder. (*See id.* at 58, 65, 67, 71, PageID.526, 533, 535, 539.)   On redirect examination, the prosecutor showed Lumpkin his initial statement to police, and Lumpkin admitted that he had told police that Fulgham committed the shooting. (*See id.* at 74, PageID.542.)

Fulgham now claims that the police and prosecution violated his right to due process when they intimidated Lumpkin into falsely implicating Fulgham as the shooter.  Fulgham also contends that the prosecutor knowingly relied on perjured testimony when she impeached Lumpkin with his statement to the police that Fulgham shot the victim.  The Court concludes that this claim was both procedurally defaulted and fails on the merits.

**1**

On direct appeal, the Michigan Court of Appeals reviewed this claim for "plain error affecting [Fulgham's] substantial rights" and concluded that Fulgham had failed to show that the prosecutor acted improperly. *Fulgham*, 2016 WL 232320, at ** 4 -5.  Respondent argues that Fulgham procedurally defaulted this claim.  The Court agrees.

As explained above, a habeas petitioner's claim is procedurally defaulted if: there is an applicable state procedural rule that the petitioner failed to comply with; the state court actually enforced the rule; the rule was an adequate and independent state ground for declining to review a federal constitutional claim; and the petitioner has failed to establish "cause" for not following the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Kelly,* 846 F.3d at 828.  Each of these factors is satisfied here.

First, Fulgham failed to comply with Michigan's contemporaneous-objection rule when he failed to object at trial to the prosecution's alleged misconduct. Second, the Michigan Court of Appeals enforced the contemporaneous-objection rule when it reviewed this claim for "plain error."  Third, as explained above, Michigan's contemporaneous-objection rule is an adequate and independent state ground for denying review of a federal constitutional claim because it is both well-established and normally enforced.  Finally, Fulgham has not established cause for his failure to object or that a miscarriage of justice will occur if the Court fails to address the substantive merits of this claim.  Indeed, Fulgham has not responded at all to Respondent's contention that this claim is procedurally defaulted.  Therefore, because Fulgham's perjury and witness-intimidation claim is procedurally defaulted, Fulgham is not entitled to federal habeas relief on that claim.

## 2

Even if Fulgham's perjury and witness-intimidation claim was not procedurally defaulted, the Court would still not grant him relief on this claim.  The Michigan Court of Appeals considered the claim on direct review under the "plain error" standard and rejected it:

> Prosecutorial intimidation of a witness violates a defendant's right to due process if the intimidation is successful. See *People v. Hill*, 257 Mich.App 126, 135; 667 NW2d 78 (2003); *People v. Canter*, 197 Mich.App 550, 569; 496 NW2d 336 (1992). In addition, a prosecutor may not knowingly use false testimony and has a

21

constitutional obligation to correct evidence known to be false. *People v. Smith*, 498 Mich. 466, 475–476; 870 NW2d 299 (2015).

Although Lumpkin identified defendant as the shooter in a prior statement to the police, he testified at trial that his previous statement was a lie. He claimed that he previously identified defendant as the shooter only because the police threatened to charge him with the offense if he did not implicate defendant. Defendant now argues that the prosecutor engaged in misconduct through witness intimidation and presenting Lumpkin's testimony at trial, knowing that he was not testifying truthfully. The record does not support defendant's argument that the police or prosecution coerced Lumpkin's trial testimony or that the prosecutor knowingly offered perjured or false testimony by calling Lumpkin as a witness at trial. Indeed, it is defendant's position that Lumpkin testified truthfully at trial that defendant was not the shooter. It is undisputed that Lumpkin gave a prior statement to the police that was inconsistent with his trial testimony, and the prosecution was entitled to use that statement to impeach Lumpkin's trial testimony. *See* MRE 613; *People v. Rodriguez*, 251 Mich.App 10, 34; 650 NW2d 96 (2002). The use of prior inconsistent statements that contradict trial testimony is not evidence of the knowing use of perjured testimony when the prosecutor does not attempt to conceal the contradictions or different versions. *See People v. Parker*, 230 Mich.App 677, 690; 584 NW2d 753 (1998). Thus, defendant has not shown that the prosecutor acted improperly. *See Cooper*, 309 Mich.App at 88.

*Fulgham*, 2016 WL 232320, at *5.

Fulgham has not shown that this ruling was an unreasonable application of, or contrary to, clearly established federal law.  Fulgham is right that prosecutors "may not knowingly present false evidence." *United States v. Fields*, 763 F.3d 443,

462 (6th Cir. 2014) (citing *Miller v. Pate,* 386 U.S. 1 (1967)).  But Fulgham has not shown that either Lumpkin's identification of Fulgham as the shooter to police or Lumpkin's sworn testimony on the second day of Fulgham's preliminary examination that Fulgham was the shooter was false.  Nor has he shown that the prosecutor knew that Lumpkin's prior statements implicating Fulgham were false.  Although Lumpkin provided a different version of the facts at trial, and testified that Fulgham was not the shooter and that he (Lumpkin) had lied when he previously identified Fulgham to police, mere inconsistencies in testimony do not establish the knowing use of false testimony by a prosecutor. *See Coe v. Bell*, 161 F. 3d 320, 343 (6th Cir. 1998).  Finally, Fulgham has not shown that the Michigan Court of Appeals unreasonably concluded that the prosecutor did not intimidate Lumpkin.  For all of these reasons, even if this claim was not procedurally defaulted, the Court would still deny Fulgham federal habeas relief.

## C

Fulgham next claims that his trial counsel provided ineffective assistance.  More specifically, Fulgham contends that counsel failed to:  (1) acquire the victim's phone records; (2) interview any of the witnesses before trial; (3) investigate the case; (4) request a jury instruction on missing witnesses and lost evidence; and (5) object to an untimely preliminary examination.

23

An ineffective assistance of counsel claim has two components. A petitioner must show that counsel's performance was deficient and that the deficiency prejudiced the defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Because the Michigan Court of Appeals adjudicated Fulgham's ineffective assistance of counsel claims on the merits, AEDPA's deferential standard of review applies to those claims. *See Kernan v. Hinojosa*, 136 S. Ct. 1603, 1604 (2016). Under AEDPA, "the question" for this Court "is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). Fulgham has not met this standard with respect to any of his ineffective assistance claims.

## 1

Fulgham first argues that his trial counsel was ineffective when counsel failed to acquire the victim's phone records. Fulgham testified at trial that he called the victim shortly after the shooting to make sure that the victim was alright, but that he did not have a record of the call. (*See* 1/29/14 Trial Tr. at 41-42, 47, ECF No. 12-6, PageID.642-643, 648.) Fulgham insists that the victim's phone records would have proved that he (Fulgham) called the victim after the shooting. The Michigan Court of Appeals considered this claim on direct review and rejected it:

> Defendant testified at trial that he called Edwards after the shooting, but his call went to Edwards's voice mail. Testimony suggested that Edwards's telephone was collected from the area where he was found, but the

24

telephone was never checked and the police never requested any telephone records. Defendant argues that defense counsel was ineffective for not obtaining and producing Edwards's telephone records at trial.

First, defendant has not submitted an offer of proof to show that he told his attorney about the phone call. At trial, defendant testified that he did not tell anyone that he called Edwards's phone before mentioning it in his testimony.

Second, even assuming that defendant told counsel about the call, defendant has not overcome the presumption that counsel's decision not to pursue that evidence was reasonable trial strategy. Counsel reasonably may have decided not to request the records because, even if the records could be obtained and showed that defendant made a call to Edwards's phone after the shooting, that evidence would not have been significant. The records would only have shown that a call was placed, not the reason for the call or that defendant could not have been the shooter. Evidence that defendant actually called Edwards's phone was not inconsistent with defendant's guilt because defendant may have called for a variety of reasons, including to deflect suspicion away from him as a suspect or to confirm that Edwards did not survive the shooting. *See Trakhtenberg*, 493 Mich. at 51. For the same reason, defendant fails to show a reasonable probability that, but for defense counsel's conduct, the result of the trial would have been different. *See id.*

*Fulgham*, 2016 WL 232320, at *7 (internal footnote omitted).

Fulgham has not shown that the Michigan Court of Appeals' conclusion is an unreasonable application of, or contrary to, clearly established federal law. Fulgham has not presented any evidence that he ever informed his counsel that he called the victim. Thus, Fulgham has not shown that his counsel would have had any reason

to request the victim's phone records.  In fact, Fulghum testified that, before trial, he did not tell anyone that he called the victim. (*See* 1/29/14 Trial Tr. at 48, ECF No. 12-6, PageID.0649.)  Moreover, when this issue arose at trial, Fulgham's counsel made the best of the situation by eliciting Fulgham's testimony that he thought the police had the phone records because they seized his phone and found the victim's phone at the scene. (*See id*. at 49, PageID.650.)  And counsel subsequently elicited officer Mott's testimony that, although the victim's phone was collected, he did not look at the phone to see if it logged any calls. (*See id*. at 61-62, Page ID.662-663.)  Finally, proof that Fulgham made the call would not have proved that he did not shoot the victim.  As the Michigan Court of Appeals pointed out, there may have been other explanations for the call.  For instance, Fulgham may have made the call in order to deflect suspicion from himself.  Or Fulgham may have been trying to confirm that the victim was dead.  For all of these reasons, Fulgham has not shown that the Michigan Court of Appeals unreasonably rejected this claim of ineffective assistance.

## 2

Fulgham alleges next that his trial counsel did not interview any of the witnesses before trial and failed to otherwise investigate his case.  It is unclear whether Fulgham exhausted these claims in state court – it does not appear that the Michigan Court of Appeals directly considered them – but in any event they lack

merit.  Fulgham has not developed this argument.  For instance, he does not identify in the petition what witnesses he wanted his counsel to interview before trial.  And aside from the allegation that trial counsel should have acquired the victim's phone records, Fulgham has not shown what else his counsel should have done to investigate the case or prepare for trial.   Nor does Fulgham explain how his trial would have been different had his counsel interviewed certain witnesses or otherwise conducted an additional investigation of Fulgham's case before trial.  Such conclusory allegations of ineffective assistance do not warrant federal habeas relief. *See Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (rejecting ineffective assistance of counsel claim where habeas petitioner "provide[d] no support for th[e] claim" and allegation was "merely conclusory").  For all of these reasons, Fulgham is not entitled to federal habeas relief on these ineffective-assistance claims.

### 3

Fulgham next says that trial counsel should have requested a jury instruction on missing witnesses and lost evidence.  The Michigan Court of Appeals considered Fulgham's claim related to the missing witness instruction on direct review and rejected it:

> Defendant also argues that defense counsel was ineffective for not objecting to the failure to produce Hall and Wright as witnesses and for not requesting that the court read the missing witness instruction to the jury. Defendant contends that the witnesses should have been called because they gave statements to the police that contributed

27

> to the issuance of an arrest warrant for defendant. Assuming that to be true, it was not unreasonable for counsel to believe that the witnesses would not have been able to provide favorable testimony. Defendant has not presented any evidence to suggest otherwise. Thus, defendant has not overcome the presumption that defense counsel's failure to request the production of these witnesses was reasonable trial strategy. And because the defense did not request production of the witnesses and no due diligence hearing was held, there was no basis for counsel to request the missing witness instruction. See *Eccles,* 260 Mich.App at 388–389. Counsel is not ineffective for failing to make a futile request. See *People v. Ericksen,* 288 Mich.App 192, 201; 793 NW2d 120 (2010).

*Fulgham*, 2016 WL 232320, at *9.

Fulgham has not shown that the Michigan Court of Appeals' conclusion is an unreasonable application of, or contrary to, clearly established federal law. Fulgham's trial counsel did not ask to have any missing witnesses produced at trial. Thus, any jury instruction related to a missing witness would have been futile and inappropriate. *See*, *e.g. See Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010) ("[C]ounsel cannot be ineffective for a failure to raise an issue that lacks merit"); *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2014) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial").

With respect to the lost evidence instruction, it does not appear that Fulgham raised that claim in state court. Nonetheless, it lacks merit. For all of the reasons stated above, even if counsel had requested such an instruction, it would have been

denied because there is no evidence the police and/or prosecution acted in bad faith as it relates to the flood that destroyed Fulgham's clothing. Therefore, a request for a jury instruction on lost evidence would have been futile. For all of these reasons, Fulgham is not entitled to federal habeas relief on this claim.

4

Finally, Fulgham argues that his trial counsel was ineffective when counsel failed to object to an untimely preliminary examination. The Michigan Court of Appeals considered this claim on direct review and rejected it:

> We also reject defendant's claim that defense counsel was ineffective for failing to raise the issue whether dismissal was proper because of the failure to timely hold the preliminary examination. Defendant has not shown that he was prejudiced by counsel's inaction. Even if counsel had timely raised this issue and obtained dismissal of the case, that dismissal would have been without prejudice to refiling the case. See *Crawford,* 429 Mich. at 157. Thus, defendant fails to show prejudice. See *Trakhtenberg,* 493 Mich. at 51.

*Fulgham*, 2016 WL 232320, at *8.

Fulgham has not shown that the Michigan Court of Appeals' conclusion is an unreasonable application of, or contrary to, clearly established federal law. The state appellate court's interpretation of state law related to the potential re-filing of the criminal charges against Fulgham is binding on habeas review. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). And given the state appellate court's conclusion that the prosecutor could have re-filed the charges against Fulgham if Fulgham's

29

counsel had objected to the untimely preliminary examination, Fulgham has not shown how he was prejudiced by any failure to object.  Fulgham is therefore not entitled to federal habeas relief on this claim.

## D

In Fulgham's fourth and final claim, he alleges that the evidence at trial was insufficient to support the jury's second-degree murder conviction.   He points out that there were only two eyewitnesses: Michael Haliburton, who was unable to identify the shooter, and Lumpkin, who testified that he did not see the shooting and that he had lied when he previously identified Fulgham as the shooter.  Fulgham further argues that although Haliburton was able to describe the shooter's clothes, the clothes that the police collected as evidence were lost and therefore could not support the jury's guilty verdict.  The Michigan Court of Appeals considered this claim on direct review and rejected it:

> The elements of second-degree murder are: "(1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse." *People v. Henderson,* 306 Mich.App 1, 9; 854 NW2d 234 (2014) (citations and quotation marks omitted). "Malice" is defined as " 'the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm.'" *Id.* at 9–10 (citation omitted). Defendant argues that no one clearly identified him as the shooter. Identity is an essential element of every offense. *People v. Yost,* 278 Mich.App 341, 356; 749 NW2d 753 (2008). Positive identification by a witness can be sufficient to

30

support a conviction. *People v. Davis,* 241 Mich.App 697, 700; 617 NW2d 381 (2000). The credibility of identification testimony is a question for the trier of fact to resolve, and this Court will not resolve the issue anew. *Id.*

Haliburton testified that he did not see who fired the first shot, but he saw a man in a white Polo shirt, who had been talking to Edwards, fire the second shot at Edwards. Haliburton's description of the shooter's clothing matched the clothing worn by defendant. Defendant admitted that he had been at the corner talking to Edwards and was wearing clothing that matched Haliburton's description. The murder weapon was found in defendant's possession at the time of his arrest, several hours after the shooting. Ballistics testing confirmed that the bullet that struck Edwards was fired out of the gun that was found in defendant's possession. This testimony, viewed in a light most favorable to the prosecution, was sufficient to enable the jury to find beyond a reasonable doubt that defendant was the person who shot Edwards. See *Lane,* 308 Mich.App at 57; *Yost,* 278 Mich.App at 356.

Lumpkin admitted that he previously told the police that defendant was the shooter, but claimed that he was pressured into making that statement. Contrary to Lumpkin's and defendant's trial testimony, Haliburton did not observe a fourth person or someone who could have been the person identified as J.D. in the area near the time of the shooting. For purposes of defendant's sufficiency challenge, we are required to resolve all conflicts in the testimony and all credibility questions in favor of the prosecution. See *Eisen,* 296 Mich.App at 331. It was up to the jury to resolve any conflicts in the testimony, as well as the credibility of defendant's testimony that he took the gun from J.D. shortly after the shooting. Viewed in this manner, the evidence was sufficient to support defendant's conviction of second-degree murder. See *Lane,* 308 Mich.App at 57; *Henderson,* 306 Mich.App at 9–10.

*Fulgham*, 2016 WL 232320, at ** 3-4.

Fulgham has not shown that the Michigan Court of Appeals' conclusion is an unreasonable application of, or contrary to, clearly established federal law. The clearly established federal law governing Fulgham's sufficiency of the evidence claim is found in the line of Supreme Court decisions concerning the level of proof necessary to satisfy the Due Process Clause. In *In re Winship*, 397 U.S. 358, 364 (1970), the Supreme Court held that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." And in *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court determined that sufficient evidence supports a conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original).

The review of insufficiency of the evidence claims under the *Jackson* standard is especially deferential in the habeas context. In habeas proceedings, the sufficiency of the evidence inquiry involves "two layers of deference": one to the jury verdict and a second to the decision by the state appellate court. *Tanner v. Yukins*, 867 F.3d 661, 672 (6th Cir. 2017). First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable

doubt." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009) (citing *Jackson,* 443 U.S. at 319) (emphasis in *Jackson*). Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.* When applying these two layers of deference, the Court's task is to "determine whether the [ ] Court of Appeals itself was unreasonable in *its* conclusion that a rational trier of fact could find [the defendant] guilty beyond a reasonable doubt based upon the evidence introduced at trial." *Id.* (emphasis in original).

Here, Fulgham has not shown that that Michigan Court of Appeals' conclusion that a rational trier of fact could have found Fulgham guilty was unreasonable. Although both Fulgham and Lumpkin testified that J.D. fired at the victim, it was not unreasonable for the state appellate court to conclude that a jury could have found that testimony not credible. In addition, as noted by the Court of Appeals, there was evidence presented to the jury that implicated Fulgham as the shooter. For all of these reasons, the Michigan Court of Appeals' conclusion that there was sufficient evidence to support Fulgham's conviction for second-degree murder. was not contrary to, or an unreasonable application of *Jackson*. Therefore, Fulgham is not entitled to federal habeas relief on this claim.

## IV

In order to appeal the Court's decision, Fulgham must obtain a certificate of appealability, which requires a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, Fulgham must show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented are adequate to deserve encouragement to proceed further. *See Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *See Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002).

Here, jurists of reason would not debate the Court's conclusion that Fulgham has failed to demonstrate entitlement to federal habeas relief with respect to any of his claims because they are all devoid of merit. Therefore, the Court **DENIES** Fulgham a certificate of appealability.

Although this Court declines to issue Fulgham a certificate of appealability, the standard for granting an application for leave to proceed *in forma pauperis* on appeal is not as strict as the standard for certificates of appealability. *See Foster v. Ludwick*, 208 F.Supp.2d 750, 764 (E.D. Mich. 2002). While a certificate of appealability requires a substantial showing of the denial of a constitutional right, a court may grant *in forma pauperis* status on appeal if it finds that an appeal is being

taken in good faith. *See id*. at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R. App. 24 (a). Although jurists of reason would not debate this Court's resolution of Fulgham's claims, an appeal could be taken in good faith. Therefore, Fulgham may proceed *in forma pauperis* on appeal.

V

Accordingly, for the reasons stated above, the Court (1) **DENIES WITH PREJUDICE** Fulgham's petition for a writ of habeas corpus (ECF No. 1), (2) **DENIES** Fulgham a certificate of appealability, and (3) **GRANTS** Fulgham permission to appeal *in forma pauperis*.

**IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
Dated:  May 20, 2020            UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on May 20, 2020, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764